UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MATTHEW FRANKS,

    Plaintiff,

v.                                                Case No. 1:12-CV-166

UNUM LIFE INSURANCE                   HON. GORDON J. QUIST
COMPANY OF AMERICA, et al.,

    Defendants.
_____/

**OPINION**

      Plaintiff, Matthew Franks, commenced this action against Defendant, Unum Life Insurance Company of America (Unum), under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, in the Circuit Court for the County of Ingham, Michigan, for review of Unum's denial of long-term disability benefits.[1] Unum removed the case to this Court on February 24, 2012.[2] Franks alleges that Unum improperly denied him disability benefits under Unum's long-term disability insurance policy. Unum has filed a Motion for Judgment Affirming ERISA Determination. (*See* footnote 2.) (Docket no. 26.) Plaintiff has not responded. After conducting a *de novo* review of the administrative record, for the reasons set forth below, the Court will grant Unum's motion.

---

[1] Case no. 11-1042-NI.

[2] Plaintiff filed a Motion to Remand (docket no. 10), which the Court granted in part. The Court denied Plaintiff's motion with respect to his ERISA claim against Unum. (Docket no. 19.)

# I. FACTS[3]

Unum provides disability benefits to employees of Orchid Orthopedic Solutions, LLC, Franks's former employer, through a Group Long Term Disability Plan (Plan), Policy no. 150434013, effective January 1, 2008. The Plan is governed by ERISA. The Plan, through the Plan administrator, delegates to Unum and its affiliate, Unum Group, discretionary authority to make benefit determinations under the Plan, including eligibility for benefits.

The Plan provides that participants are entitled to monthly long-term disability benefits if participants satisfy various conditions, including being disabled within the meaning of the term as defined by the Plan. According to the Plan:

> You are disabled when Unum determines that:
>
> - you are limited from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> -you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> * * *
>
> **MATERIAL AND SUBSTANTIAL DUTIES** means duties that:
>
> - are normally required for the performance of your regular occupation; and
> - cannot be reasonably omitted or modified.
>
> * * *
>
> **REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

(Administrative Record (AR), Docket no. 24, Page ID 848, 864–66 (bold typeface in original).)

On or about July 20, 2009, Franks filed an application for disability benefits due to severe back problems and degenerative disc disease. Franks was employed as a CNC Operator (Level 1).

---

[3] The following facts are taken from the Administrative Record (docket nos. 23–25).

According to a job description, Franks's position had thirteen responsibilities and duties, including "perform daily maintenance on the CNC's [sic]" and "dispose of all CNC scrap material." (AR 103.) In handwriting, the bottom of the job description also reads, "Additional notes: Majority of time spent is standing and frequent bending is required." (*Id.*) After Franks's initial application, Unum received an Attending Physician's Statement (APS) from Doctor Nilesh Kotecha. Dr. Kotecha informed Unum that Franks had degenerative disc disease causing back and leg pain, and Franks was scheduled for an "L4-S1 posterior lumbar interbody fusion" on July 22, 2009. In the section "Return to Work," Dr. Kotecha indicated that improvement in Franks's capabilities could be expected starting six weeks post-operation and Franks could be expected to return to work around October 22, 2009. For restrictions and limitations, Dr. Kotecha wrote, "No bending/twisting/lifting, no repetitive sitting/standing."

On July 22, 2009, Dr. Kotecha performed an "L4-5, L5-S1 arthrodesis, laminectomy, facetectomy" on Franks. (AR 99.) After surgery, on September 8, 2009, Franks had an appointment with Dr. Kotecha, who observed that Franks complained of back pain after a slip and fall that occurred three weeks after his surgery. Dr. Kotecha noted that Franks had full strength in his lower extremities with normal reflexes at his knees and ankles, and his incision had healed nicely. Dr. Kotecha prescribed physical therapy for Franks's back and recommended that Franks not return to work yet.

On October 1, 2009, Dr. Kotecha noted that Franks had been in a motor vehicle accident. In an office examination dated October 6, 2009, Dr. Kotecha recommended that Franks obtain an MRI. On October 20, 2009, Dr. Kotecha noted that the MRI scan of the lumbosacral spine was largely unremarkable. He also recommended that Franks see a physiatrist in Lansing named Dr. Ryan O'Connor, whom Dr. Kotecha noted Franks had seen in the past.

On November 10, 2009, Franks visited Dr. O'Connor. Dr. O'Connor noted that Franks had been in a motor vehicle accident. Franks stated that, after the accident, he was not immediately hospitalized but he had increasing pain the following day and went to his primary care physician, Dr. Steven Owens. Dr. O'Connor explicitly noted that he did not have Dr. Owens's office notes for review and Franks did not bring the results of the spinal MRI that had been conducted. Dr. O'Connor observed Franks was experiencing a slightly decreased range of motion in forward, side, and backward bending. He characterized the motor vehicle accident as a setback, but noted that most of the pain appeared to be soft tissue and hypothesized that Franks would improve with regard to the pain caused by the accident "in fairly short order compared to his chronic underlying condition," which had "significantly improved after [Franks's] spinal fusion in July of 2009." (AR 157.) Dr. O'Connor recommended 1–2 months physical therapy, including an aquatic pool program to control muscle spasms, then a land-based program. He noted that Franks was a candidate for fluoroscopy-guided caudal lumbar epidural steroid injections. Dr. O'Connor also stated, "I suspect [Franks] would remain off work until he has completed treatment, which likely will take up to 2 months for which at that point I think he will be at maximum medical improvement relative to the new symptoms that may have been created from his [motor vehicle accident] of 9/30/09. Whether or not he returns to work as a "machinist" remains to be determined and can be reassessed after 2 months." (AR 157.)

In September 2009, Franks had been referred to Orthopedic Rehab Specialists, P.C., for physical therapy. However, in a discharge summary dated November 27, 2009, the physical therapist, Aaron W. Holly, noted that Franks had not returned to therapy, and had not responded to his telephone call.

On or about January 12, 2010, Unum received a "Return to Work" form from Dr. O'Connor's office stating that Franks could return to work beginning March 1, 2010. (AR 165.) On February 2, 2010, Kim Frassrand, an Unum Senior Disability Benefits Specialist, initiated a telephone call with Franks to discuss his return to work. Franks advised Frassrand that his tentative return date was March 1, 2010, that he had joined a gym, was doing biking and using a treadmill, and had continued physical therapy three days per week. However, Franks noted that he still had difficulty "bending, twisting, standing, sitting for 15–20 minutes at a time without needing help to get back up." (AR 235.) He also indicated that he had spoken with his employer to see if another occupation would be available because he and Dr. O'Connor had "concerns" about him going back to his machinist occupation. (AR 236.) His employer had informed him that they did not have another occupation available but they would see if a new occupation became available. Franks indicated that he had left in good standing with his employer. He also said he would be interested in return-to-work vocational assistance, because he did not know if he would be able to return to his old occupation.

On February 25, 2010, Frassrand received a call from Franks. Franks advised her that Dr. O'Connor had told Franks that Franks would never be able to return to his old job and that he should look for a new job. Franks explained that his old job required heavy lifting, with frequent twisting and turning. Franks also stated that he had been terminated from his old job in October 2009 and he had applied to a radiology program at a local community college and had been accepted, and that he would meet with the school the following day.

On approximately March 2, 2010, Unum received another APS from Dr. O'Connor. Dr. O'Connor had last examined Franks on February 22, 2010, and opined that Franks could: sit, stand, and walk continuously (defined as 67 to 100 percent of the time), and climb, twist/bend/stoop, reach

5

above shoulder level, and operate heavy machinery continuously. Additionally, with respect to Franks's ability to "lift/carry," Dr. O'Connor opined that Franks could continuously lift/carry up to 10 pounds, occasionally (defined as up to 33 percent of the time) lift/carry up to 50 pounds, and never lift/carry between 51 and 100 pounds. Finally, regarding permanent restrictions, Dr. O'Connor stated, "no lifting greater than 25 pounds frequently/ 50 pounds infrequently." (AR 362.)

In his notes for the February 22, 2010 examination, Dr. O'Connor recommended that Franks should continue therapy for 3–4 more weeks, and observed that Franks "wants to return to work and is considering different types of work long-term to help with that goal (radiology technician)." In his plan for treatment, Dr. O'Connor stated,

> I think he is going to fall in the light-to-moderate duty activity for physical work and restrictions which would place him somewhere between the 25 to 50-pounds of lifting range. . . . The fact that he has a 2 level instrumented fusion in my opinion with chronic pain does play into effect that he will not be able to perform heavy exertional type of work activities.

(AR 366.)

On March 2, 2010, Frassrand spoke by telephone with Mary Kay Webber at Franks's former employer to discuss Franks's work options. Webber indicated that the employer "would like to see a full release and that all of [its] jobs required frequent to constant standing, with a lot of lifting like the Machinist job." (AR 344.) She advised that the employer might be able to accommodate Franks for a limited period of time, such as one week, but it would depend on how long and what the restrictions were, as all of the jobs had similar requirements to the machinist job.

Unum referred Franks's claim for a medical records review to Dr. Denise Williamson. Dr. Williamson concurred with Dr. O'Connor's restrictions and limitations, but observed that Franks had been scheduled for an independent medical examination and Unum did not have the results.

6

Absent lesser restrictions from that reviewing physician, Dr. Williamson noted that Dr. O'Connor's recommended restrictions should be observed.

On or about March 23, 2010, Unum informed Franks that his long-term disability benefits claim had been approved through March 26, 2010. However, any payments made after that date were made under a "Reservation of Rights," meaning "the payment cannot be interpreted as an acceptance of past, present or future responsibility." (AR 391.)

In or about March 2010, and again in April 2010, Unum vocational consultant Catherine Rogers conducted a vocational assessment of Franks. To measure how the occupation is performed in the national economy, Unum looked to the Dictionary of Occupational Titles. The occupation "CNC Operator (Level 1)" (listed in DOT as CNC Machinist, no. 600.280-022) is described by the following physical demands:

> Medium work: exerting 20 to 50 pounds of force
>
> Frequently: lift/carry 10 to less than 20 pounds, Standing, reaching, handling, finginer [sic]
>
> Occasionally: - lift/carry 20 to less than 50 pounds, push/pull, walking, sitting, balancing, stooping, kneeling, crouching, keyboarding.
>
> Not present: climbing, crawling.
>
> Definitions of Frequency per The Revised Handbook for Analyzing Jobs:
>
> 'Occasionally' = Activity or condition exists up to 1/3 of the time (0 – 2.5 hours a day in an 8-hour workday)
>
> 'Frequently' = Activity or condition exists from 1/3 to 2/3 of the time (2.5 – 5.5 hours a day in an 8-hour workday)
>
> 'Constantly' = Activity or condition exists 2/3 or more of the time (5.5+ hours a day in an 8-hour workday)

(AR 410.) Rogers concluded that the demands of Franks's occupation did not exceed his physical restrictions and limitations. She noted that Franks would not be required to lift more than 50 pounds in his occupation, and he was able to continuously stand.

On April 5, 2010, Franks had a follow-up appointment with Dr. O'Connor. In his doctor's notes, Dr. O'Connor observed that Franks made gains with lumbar epidural injections but did not have complete lower back pain relief. However, his pain stayed within a functional range of 2 to 4 out of 10, and he had no shooting pain down his legs. Dr. O'Connor also observed that Franks wanted to get back to school to work in a setting where he no longer required disability and to get a job he could physically handle. O'Connor noted that he and Franks had discussed at length Franks's new career plans as a radiology technician. No new physical changes were noted.

On April 22, 2010, Unum confirmed with Dr. O'Connor's office that Franks's restrictions and limitations had not changed. On or about April 23, 2010, Unum informed Franks that he would not receive additional disability benefits because Unum's vocational consultant had concluded that Franks's permanent restrictions did not preclude him from performing his regular occupation.

Franks appealed Unum's denial of long-term disability benefits in or about August 2010. During the appeal, Unum received a copy of the results of the independent medical examination by Dr. Jeffrey Middeldorf, performed at the request of State Farm Insurance. Dr. Middeldorf opined that the motor vehicle accident had temporarily exacerbated Franks's condition and Franks would have difficulty with activities involving lifting over 10 pounds, or any "heavy" pushing, pulling, repetitive bending twisting, kneeling, or crawling. (AR 491.) He recommended that these restrictions be in place through July 2010, one year after Franks's initial surgery.

In October 2010, Dr. Andrew Krouskop conducted another medical review of Franks's records for Unum. Dr. Krouskop concluded that Franks's lumbar condition would support a lifting

8

restriction of 25 pounds frequently and 50 pounds occasionally. Therefore, he agreed with Dr. O'Connor's restrictions and limitations that Unum confirmed on April 22, 2010.

On or about October 15, 2010, Unum informed Franks's attorney that Franks's appeal was denied. Unum advised that its reviewing physician agreed with Dr. O'Connor's restrictions and limitations of April 22, 2010—that Franks's "lumbar condition would support a lifting restriction of 25 pounds frequently and 50 pounds occasionally." (AR 517; *see also* 362.) However, the reviewing physician also concluded that Franks's medical file indicated that Franks was able to perform the duties of his regular occupation, and Unum's decision to deny Franks disability benefits was appropriate. Following Unum's denial of Franks's appeal, Franks commenced litigation in Ingham County Circuit Court, Michigan, seeking reversal of Unum's decision.

## II. DISCUSSION

### A. Standard of Review

The threshold issue that the Court must decide is the applicable standard of review.[4] Generally, in an ERISA case, a court reviews a denial of benefits *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956–57 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). However, Michigan Administrative Code Rule 500.2202(b) modifies that standard because it prohibits provisions granting discretionary authority to insurance companies in group insurance policies issued after July 1, 2007. *See* Mich. Admin. Code R. 500.2202(b). The Sixth Circuit has

---

[4] As an initial matter, the Sixth Circuit has held that summary judgment is inappropriate for reviewing denial of benefit claims under ERISA. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998); *see also* ERISA Case Management Order, Docket no. 21, Page ID 259.

held that ERISA does not preempt state administrative rules that prohibit discretionary clauses. *Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 608–09 (6th Cir. 2009). In effect, Rule 500.2202 voids discretionary clauses in insurance policies issued after July 1, 2007, thus requiring a reviewing court to apply a *de novo* standard of review. *See id.*

The *de novo* standard of review applies to both factual determinations and legal determinations by a plan administrator. *Rowan v. Unum Life Ins. Co. of Am.*, 119 F.3d 433, 435 (6th Cir. 1997). "In the ERISA context, the role of the reviewing federal court is to determine whether the administrator or fiduciary made a correct decision, applying a *de novo* standard." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). "This review is limited to the administrative record and the court is obligated to determine whether the administrator properly interpreted the plan and if the insured was entitled to benefits under the plan." *Kaye v. Unum Group/Provident Life and Accident*, No. 09-14873, 2012 WL 124845, at * 5 (E.D. Mich. Jan. 17, 2012) (citing *Perry*, 900 F.2d at 967). "The administrator's decision is accorded no deference or presumption of correctness." *Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002) (citing *Perry*, 900 F.2d at 966). "When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998) (citations omitted).

**B. Analysis**

Defendant Unum argues that the appropriate standard of review in this case is the arbitrary and capricious standard, citing *Perry*, 900 F.2d 963. (Def.'s Br. Supp. Def. Mot. J. Affirming ERISA Determination, Docket no. 26, Page ID 1499.) However, Unum omits any mention of Michigan Administrative Rule 500.2202, which modifies the standard articulated by the Sixth

Circuit in *Perry*. Moreover, Unum fails to address why the discretionary clause in Franks's policy, effective January 1, 2008 is not voided by Rule 500.2202. The Court determines that the correct standard of review is *de novo*.

In his Complaint, Franks argues that Unum denied Franks benefits "in direct violation of the terms of the Plan" and in violation of Unum's fiduciary duties. (Compl., Docket no. 1, Page ID 10–11.) In support of its Motion for Judgment Affirming ERISA Determination on the administrative record, Unum commits its brief to arguing that the plan administrator's decision should be upheld on the basis that it was not arbitrary and capricious and puts forth no arguments under the *de novo* standard. Franks has not responded to Unum's motion.

As a preliminary matter, this Court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (observing in a summary judgment context that a court is not required to do the work of the nonmoving party); *cf. Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (observing in the context of a summary judgment motion that "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact'") (citations omitted). Therefore, because Franks failed to respond to Unum's motion for judgment on the administrative record, the Court cannot ascertain the basis of Frank's argument that Unum wrongly denied Franks benefits. However, for purposes of *de novo* review, the Court will look to the administrative record on its face to see if the plan administrator's decision was correct. *See Perry*, 900 F.2d at 966.

After a *de novo* review of the administrative record, the Court will grant Unum's motion and dismiss Franks's ERISA claim. The question before the Court is whether the plan administrator's decision was correct.

For purposes of Unum's Plan, Unum measures the functionality requirements of Franks's occupation with reference to how the occupation is "normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." (AR, Docket no. 24, Page ID 848.) To measure how the occupation is performed in the national economy, Unum looks to the Dictionary of Occupational Titles. (*See* AR 410.) Franks's occupation requires him to lift or carry between 10 to 20 pounds frequently, which means two-thirds or more of the time; and lift or carry 20 to 50 pounds occasionally, meaning up to one-third of the time. The position does not require lifting more than 50 pounds. (*Id.*)

On or about March 5, 2010, Dr. O'Connor provided Unum with an APS form assessing Franks's functional capacity and recommending permanent restrictions. He confirmed that Franks had the ability to continuously (meaning 67 to 100 percent of the time) sit, stand, walk, climb, and twist/bend/stoop. Dr. O'Connor also opined that Franks could "never" lift or carry more than 50 pounds, but he could occasionally (meaning up to 33 percent of the time) lift or carry 21 to 50 pounds and continuously lift or carry up to 10 pounds. For permanent restrictions, Dr. O'Connor wrote "no lifting greater than 25 pounds frequently or 50 pounds infrequently." (AR 362.) Dr. Williamson used these restrictions in conducting an initial review of Franks's benefits claim, which was granted.

On or about October 12, 2010, Dr. Krouskop conducted a second review in response to Franks's appeal. Dr. Krouskop concurred with Dr. O'Connor's restrictions and limitations, which had not changed. Dr. Krouskop observed that no additional restrictions were recommended or

supported by the record. On or about October 15, 2010, Unum notified Franks that Unum had denied Franks's appeal because the reviewer determined that Franks was able to perform the duties of his regular occupation and no longer met the definition of disabled. In support of its decision, Unum explained that Dr. O'Connor confirmed with Unum that his April 22, 2010 restrictions were unchanged, so "the more current opinion from Dr. O'Connor regarding [Franks's] functionality does not prevent him from performing his occupational duties. . . . Utilizing the actual functional limitations provided by Dr. O'Connor on the medical findings, [Franks] is not precluded from returning to his regular occupation." (AR 517.)

Franks has not challenged any specific part of the record or the plan administrator's determination. The Court discerns no error in the plan administrator's decision and will uphold it under *de novo* review.

### III. CONCLUSION

For the foregoing reasons, the Court will enter judgment on the administrative record in favor of Unum. An order consistent with this Opinion will be entered.


Dated: February 6, 2013                   /s/ Gordon J. Quist
                                          GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE